# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARICEL MARCIAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 16-cv-6109 |
| ) | Magistrate Judge Susan E. Cox |
| RUSH UNIVERSITY MEDICAL ) | |
| CENTER; DR. MICHAEL KREMER; in ) | |
| his individual capacity, RAY NARBONE; ) | |
| in his individual capacity; and JILL ) | |
| WIMBERLEY, in her individual capacity, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons discussed below, Defendants' Motion to Exclude Plaintiff's Expert Witness Dr. Steven Farmilant [Dkt. 78] is denied. A status hearing is set for September 5, 2018 at 9:30 a.m. to discuss dispositive motion and/or trial deadlines. As per this Court's order of May 21, 2018 [Dkt. 85], Defendants' expert disclosure and report are due within 28 days of this Order.

## BACKGROUND

For a basic summary of the factual background of this case, the Court refers to its opinion on Plaintiff's Motion to Seal [Dkt. 93], which is being entered simultaneously with the instant opinion.[1]

On April 3, 2018, Plaintiff disclosed Steven R. Farmilant, Psy. D, as her expert witness. [Dkt. 80-1.] According to Dr. Farmilant, he was asked to assess whether the perceived unfair

---

[1] For a more complete summary of the allegations in Plaintiff's complaint, refer to this Court's Memorandum Opinion and Order addressing Defendants' Motions to Dismiss. [Dkt. 49] Although the Plaintiff subsequently filed an amended complaint to address some of the deficiencies identified by the Court in its previous opinion, the narrative contour of Plaintiff's allegations remains the same.

1

treatment against Plaintiff "would reasonably be expected to impair one's work performance, and to assess Ms. Marcial to determine if she meets the diagnostic criteria for any stress disorder that might have resulted from this treatment." [Dkt. 80-1.] Following Plaintiff's disclosure, Defendants moved to exclude Dr. Farmilant's testimony. [Dkt. 78.] On the date that her memorandum in opposition to the instant motion was due, Plaintiff also moved to file an addendum to Dr. Farmilant's expert report [Dkt. 90]; Defendants did not oppose that motion, and Dr. Farmilant's addendum became part of the record. [Dkt. 95.] Neither party felt it necessary to start the briefing over again in light of Dr. Farmilant's addendum. Defendants filed their reply brief, Plaintiff did not seek leave to file a sur-reply, and the motion is now fully briefed and ready for disposition.

Because the addendum is much more robust than the original report, the Court will primarily focus its analysis on the addendum.[2] [Dkt. 90-1.] According to Plaintiff, "Dr. Farmilant's amended report offers the trier of fact crucial insight into the effects of Defendants' harassment, discrimination, and retaliation, on [Plaintiff's] ability to perform to her abilities in the [Rush CRNA] program." [Dkt. 89 at 7.] In other words, Dr. Farmilant's reports are not solely intended to show that Plaintiff suffered psychological harm due to Defendants' alleged discrimination, but also to demonstrate that Defendants' purported non-discriminatory reasons for dismissing Plaintiff from the CRNA program (*i.e.*, clinical mistakes and performance problems) were actually a result of the Defendants' alleged discrimination, because Defendants' treatment of Plaintiff caused stress that negatively affected her work performance.

To formulate his opinions, Dr. Farmilant reviewed, *inter alia*, certain filings and discovery materials from this case, Plaintiff's academic transcripts, contemporaneous mental

---

[2] Where the Court is referring to, or quoting from, the original report [Dkt. 80-1], the record citation will indicate as such.

health records from Plaintiff's treaters, several academic articles about the effect of stress and bullying on employees, a recording Plaintiff made of a meeting with Rush administrators without their consent, and also relied on a 4.5-hour in-person evaluation of Plaintiff he conducted with Plaintiff. [Dkt. 90-1 at 1-2.] Ultimately, Dr. Farmilant determined that "[t]he level of threat and feelings of anxiety [Plaintiff] experienced when exposed to hostile supervision rose to the level of traumatic stress, which acutely impaired her performance, which ultimately deprived her of equal opportunity for education." [Dkt. 90-1 at 4.] Dr. Farmilant supported this conclusion by quoting at length one of the aforementioned academic articles, which Farmilant contends demonstrates that "[a] significant relationship has been observed between workplace bullying and PTSD symptoms." [Dkt. 90-1 at 4.] Dr. Farmilant then draws from clinical notes from Plaintiff's sessions with her therapist to demonstrate how Plaintiff was contemporaneously reporting the level of stress that her treatment at work was causing. [Dkt. 90-1 at 4.] Applying this academic literature to what he has learned about Plaintiff's specific case from his review of the materials provided to him, Dr. Farmilant opined that Plaintiff's experience at Rush was so stressful that it negatively affected her performance.

Additionally, Dr. Farmilant found that Plaintiff "meets the diagnostic criteria for Posttraumatic Stress Disorder." [Dkt. 90-1 at 10.] During his meeting with Plaintiff, Dr. Farmilant administered three psychiatric tests, including the Detailed Assessment of Posttraumatic Stress ("DAPS"). [Dkt. 80-1 at 2.] Dr. Farmilant noted that the DAPS "is a valid and reliable psychological test designed to rate levels of symptomatology associated with a specific traumatic event." [Dkt. 80-1 at 7.] Although the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5") criteria for PTSD requires exposure to actual or threatened death, serious injury, or sexual violence (none of which apply to Plaintiff's case), Dr. Farmilant cited

3

"recent scientific research published in peer-review journals" that "found a correlation between workplace bullying and PTSD . . . and racism and PTSD." [Dkt. 80-1 at 7 (citations omitted).] Dr. Farmilant determined that the DAPS could be appropriately used on Plaintiff "after observing her emotional reaction while discussing the events she experienced." Dr. Farmilant found that Plaintiff's "responses to the DAPS, using the supervisory experience with Ms. Wimberley as the index event, indicate re-experiencing, avoiding, and hypervigilance that rise to the level of a diagnosable stress disorder." [Dkt. 80-1 at 7.]

## DISCUSSION

### I. LEGAL STANDARD

The admission of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Put differently, expert testimony must assist the trier of fact and be reliable. *Wood*, 807 F.3d at 834. The trial court is the gatekeeper of expert testimony, but must focus on the "'soundness and care with which the expert arrived at her opinion,'" not whether the opinion itself is correct. *Id.* (quoting *Schultz v. Akzo Nobel Paints, LLC,* 721 F.3d 426, 431 (7th Cir. 2013)).

### II. DR. FARMILANT IS QUALIFIED TO SERVE AS AN EXPERT WITNESS

In their opening brief, Defendants argued that Dr. Farmilant had failed to demonstrate that he was qualified to serve as an expert witness. However, Dr. Farmilant's addendum includes a list of his prior depositions and court testimony, as well as a *curriculum vitae*. Defendants did not raise this issue again in their reply brief following the filing of the addendum, and the Court believes that the addendum remedies the matter as originally raised by Defendants. As such, the Court will not exclude Dr. Farmilant's testimony on this basis.

### III. DR. FARMILANT'S OPINION IS BASED ON RELIABLE METHODS

Defendants raise several arguments regarding the reliability of Dr. Farmilant's findings, none of which are availing; the Court will address each of them below. First, Defendants argue that Dr. Farmilant's opinion is "internally inconsistent." [Dkt. 96 at 9.)] As proof, Defendants offer that Dr. Farmilant stated that Plaintiff experienced "persistent, recurring, oppressive, offensive, abusive, intimidating, malicious, and insulting behavior by superiors." [Dkt. 90-1 at 4.] According to Defendants, Dr. Farmilant only identified one example of such behavior – when Wimberley made certain comments to Plaintiff in June 2013 – whereas the remainder of the examples consist of other individuals "properly report[ing] [Plainitff's] deficiencies in writing." [Dkt. 96 at 9-10.] Beyond presenting a semantic argument that is not sufficient to warrant exclusion of testimony (*i.e.*, whether reporting Plaintiff's mistakes in writing could be considered oppressive or insulting behavior), Defendants are factually incorrect about Dr. Farmilant's opinion. For example, in the addendum, Dr. Farmilant notes that the Director of Operating Room Services at Rush "made several hostile and threatening comments to [Plaintiff], including suggesting that she was 'delusional' if she thought she could complete the program, that she was emotionally unfit and making a reference to her age." [Dkt. 90-1 at 6.] Moreover, Dr. Farmilant highlights Defendant Kremer's decision to place Plaintiff under Defendant

Wimberley's supervision, despite Wimberley's previous allegedly abusive behavior towards Plaintiff, which could also be considered oppressive behavior. Therefore, Dr. Farmilant's opinion is not "internally inconsistent," and the Court rejects Defendants' argument on this issue.

Second, Defendants assert that Dr. Farmilant's opinion is unreliable because he did not rely on the psychiatric tests he conducted to reach his opinions, and "does not connect any of those results to [Plaintiff's] clinical performance or any of his other conclusions." [Dkt. 96 at 10.] In particular, Defendants focus on Dr. Farmilant's discussion of the DAPS test, and contend that "Dr. Farmilant does not state that the DAPS showed that [Plaintiff] had a stress disorder in 2013-2014 when she made the clinical errors that led to her dismissal from the Program." [Dkt. 96 at 10.] The primary problem with this line of argument is that it fundamentally misunderstands the purpose of the DAPS test, which as its name clearly implies, is to determine if a patient is suffering from post-traumatic stress disorder. Also, post-traumatic stress disorder, as *its* name clearly implies, comes *after* the occurrence of a traumatic event. Given that Plaintiff's case identifies her treatment at Rush as the triggering traumatic event that caused her PTSD, it would be a logical impossibility for her PTSD to have caused her to make clinical errors while at Rush; she could not have had PTSD when the trauma itself was ongoing. Of course, if Defendants were correct that the only opinion Dr. Farmilant provided concerned the effect of stress on her clinical performance, the DAPS test would be unreliable or irrelevant because it would be testing for an anxiety disorder that Plaintiff could not possibly use to blame for her clinical mistakes. However, as noted above, Dr. Farmilant was retained to render an opinion on two issues: 1) whether Defendants' alleged treatment of Plaintiff would reasonably be expected to impair one's work performance, and 2) to assess whether Plaintiff meets the diagnostic criteria for any stress disorder that she suffered as a result of that alleged treatment.

Dr. Farmilant's addendum explicitly finds that Plaintiff meets the diagnostic criteria for PTSD. The DAPS test is a reliable method of determining whether a patient meets those criteria. *See Discepolo v. Gorgone*, 399 F. Supp. 2d 123, 125 (D. Conn. 2005) (admitting psychiatrist's report that utilized DAPS to determine that plaintiff suffered from PTSD). As such, Defendants' arguments are unfounded, and the Court will not exclude Dr. Farmilant's testimony on this basis.

Third, Defendants argue that it was improper to rely on Plaintiff's version of events and accept "her account of her experience at Rush, including facts at issue." [Dkt. 96 at 11.] Essentially, the Defendants are attacking the facts on which Dr. Farmilant's opinions are based. However, "the soundness of the factual underpinnings of the expert's analysis" is a "factual matter[] to be determined by the trier of fact." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). To the extent Defendants believe that Plaintiff's version of the facts is untrue or that the version of the facts on which Dr. Farmilant based his opinion is incomplete, vigorous cross-examination is the appropriate vehicle to address those problems. If Defendants are arguing that relying on a party's version of events is somehow an unreliable methodology, that argument also fails. Dr. Farmilant was hired, in part, to determine if Plaintiff meets any diagnostic criteria for a stress disorder. The Court believes that evaluating a patient – and recording their recitation of events – is a reliable way for a mental health professional to determine whether the patient suffers from a stress disorder. As such, the Court also rejects this argument. Similarly, Defendants' claim that Dr. Farmilant's opinion should be excluded because he failed to rule out alternative causes for Plaintiff's stress and anxiety also fails. In the event that Dr. Farmilant failed to consider alternative sources, that is an attack on the factual underpinning of his opinions, not the methodology, and is also best approached through cross-examination.

Finally, Defendants argue that Dr. Farmilant improperly makes findings of fact and conclusions of law. Dr. Farmilant has not, in fact, made any findings of fact, as he has no ability to do so. That role is reserved for the fact finder. Of course, Dr. Farmilant uses certain facts to support his opinions, which is to be expected of any expert witness. As discussed above, Dr. Farmilant's factual underpinnings may be challenged through the cross-examination process. As for conclusions of law, Dr. Farmilant may not make any such findings, but Defendants' have not pointed to any such conclusions that would support exclusion. The closest they come is a passing reference to "hostile supervision," which is not a conclusion of law. While "hostile work environment" is a legal term of art, "hostile supervision" is not; expert witnesses are not prohibited from using adjectives that appear elsewhere in legal terms of art. Because Defendants have failed to point to any conclusions of law that Dr. Farmilant made, the Court also rejects this argument.

## IV. DR. FARMILANT'S OPINION WILL ASSIST THE TRIER OF FACT

Defendants also assert that "Dr. Farmilant's testimony does not bear on facts that are disputed in the case and materials to Plaintiff's claims." [Dkt. 96 at 3.] This argument is overbroad and incorrect. The Court will not respond to the individual points raised by Defendants in their briefs, but will instead focus on whether Dr. Farmilant's expert report would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evidence 702(a). Therefore, as long as Dr. Farmilant's opinion will help the trier of fact understand the evidence, it is admissible.

Certainly, Dr. Farmilant's opinion that Plaintiff meets the diagnostic criteria for PTSD would assist the trier of fact in understanding evidence regarding her damages resulting from the

allegedly discriminatory conduct in this case. Defendants do not dispute this, and that alone would be sufficient to allow Dr. Farmilant to render his opinions.

As for Dr. Farmilant's opinion that Plaintiff's work-related stress caused her to make clinical errors, this opinion could also assist the trier of fact. The legal standard for discrimination under Title VII is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 765 (7th Cir. 2016). In Title VII, the Plaintiff need not show but-for causation; "[i]t suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *University of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013) (citing *Price Waterhouse v., Hopkins*, 490 U.S. 228 (1989)). If Plaintiff can show that she was subjected to discriminatory treatment, which caused her to perform in a subpar manner due to stress from that treatment, it would assist a trier of fact in determining whether Plaintiff's protected status was one of the causes for her firing. Dr. Farmilant's opinions would certainly assist a trier of fact in weighing the validity of Defendants' claims that Plaintiff's subpar performance was the only reason for her eventual discharge from the program. While the probative value of that testimony may be relatively slight, and the needle through which the Plaintiff must thread that testimony may be fairly small, the Court cannot say that Dr. Farmilant's opinion would not assist the trier of fact in making decisions related to causation. As such, the Court will not exclude the reports or opinions on this basis either.

## V. THE ILLINOIS EAVESDROPPING ACT DOES NOT JUSTIFY EXCLUSION

Defendants also seek to exclude Dr. Farmilant's opinion because he relied on a recording that Plaintiff made that purportedly violated the Illinois Eavesdropping Act. Under that act, a person is prohibited from recording any part of a conversation without the consent of all the parties to the conversation. 720 ILCS 5/14-2(a)(1). Courts in this district have held that the Illinois Eavesdropping Act does not affect the admissibility of evidence in federal civil suits where federal substantive law provides the rule of decision. *See Glinski v. City of Chicago*, 2002 WL 113884, at *4 (N.D. Ill. Mar. 28, 2002). As such, this is not a valid basis for excluding Dr. Farmilant's testimony.[3]

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Exclude Plaintiff's Expert Witness Dr. Steven Farmilant [Dkt. 78] is denied. A status hearing is set for September 5, 2018 at 9:30 a.m. to discuss dispositive motion and/or trial deadlines. As per this Court's order of May 21, 2018 [Dkt. 85], Defendants' expert disclosure and report are due within 28 days of this order.

**ENTERED:**

Date: August 30, 2018

_____
U.S. Magistrate Judge, Susan E. Cox

---

[3] The Illinois Eavesdropping Act may, however, be used to limit admissibility of evidence in federal courts hearing pendant state law claims. *See Glinksi*, 2002 WL 113884, at *7. Although most of Dr. Farmilant's opinion appears to be targeted at Plaintiff's federal claims and not her state law causes of action, the Court need not reach that decision here. The Court may limit the applicability of Dr. Farmilant's opinion to certain causes of action or entertain the possibility of limiting jury instructions at a later date. However, for the purposes of this motion, it is sufficient that the Illinois Eavesdropping Act does not affect the admissibility of the recording on which Dr. Farmilant relied for the purposes of Plaintiff's federal claims.