IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARICEL MARCIAL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RUSH UNIVERSITY MEDICAL ) <br> CENTER; DR. MICHAEL KREMER; in ) <br> his individual capacity, RAY NARBONE; ) <br> in his individual capacity; and JILL ) <br> WIMBERLEY, in her individual capacity, ) <br> ) <br> Defendants. ) | Case No: 16-cv-6109 <br> Magistrate Judge Susan E. Cox |

## MEMORANDUM OPINION AND ORDER

For the reasons discussed below, Plaintiff's Motion for Leave to File Documents Under Seal [93] is granted in part and denied in part.

## BACKGROUND

Plaintiff Maricel Marcial ("Plaintiff") is a 44-year-old Asian woman of Filipina descent.[1] (Dkt. 51 at ¶ 9.) In 2012, Plaintiff, who had previously worked for fifteen years as a registered nurse, enrolled in the Certified Registered Nurse Anesthetist ("CRNA") program at the Rush University Medical Center ("Rush") College of Nursing. (*Id.* at ¶¶ 10-11.) The CRNA program consists of a didactic program and a fifteen-month clinical course of study. (*Id.* at ¶¶ 12-13.) Plaintiff completed the didactic program with a 3.6 grade point average (on a 4.0 scale); Plaintiff did not experience any issues during her first six weeks of the clinical program. (*Id.* at ¶¶ 12, 17.) In June 2013, Plaintiff began being supervised by Defendant Jill Wimberly ("Wimberly").

---

[1] For a more complete summary of the allegations in Plaintiff's complaint, refer to this Court's Memorandum Opinion and Order addressing Defendants' Motions to Dismiss. [Dkt. 49] Although the Plaintiff subsequently filed an amended complaint to address some of the deficiencies identified by the Court in its previous opinion, the narrative contour of Plaintiff's allegations remains the same.

(*Id.* at ¶ 18.) The main thrust of Plaintiff's allegations concern Wimberley engaging in a campaign of misconduct and misrepresentation to humiliate and discredit Plaintiff. (*Id.* at ¶¶ 19-23.) Plaintiff further alleges that administrators in the CRNA program (including Defendants Michael Kremer and Raymond Narbone) failed to properly handle Wimberley's harassment. (*Id.* at ¶¶ 25-58.) Rush eventually dismissed Plaintiff from the CRNA program, after she took leaves of absence, in part due to the stress that her treatment at Rush caused her. (*Id.* at ¶ 55.)

The Plaintiff filed the instant suit on June 10, 2016; the operative complaint brings the following claims: 1) race discrimination under Title VII against Rush (Count I); 2) national origin discrimination under Title VII against Rush (Count II); 3) age discrimination under the ADEA against Rush (Count III); 4) retaliation under Title VII against Rush (Count IV); 5) retaliation under the ADEA against Rush (Count V); 6) intentional race and national origin discrimination under Title VI against Rush (Count VI); 7) retaliation under Title VI against Rush (Count VII); 8) breach of contract against Rush (Count VIII); 9) tortious interference with contract against Kremer, Narbone, and Wimberly (collectively, "the Individual Defendants") (Count IX);[2] 10) tortious interference with prospective economic advantage against the Individual Defendants (Count X). (Dkt. 51.) Each of Plaintiff's claims alleges that she suffered the following damages: "ill health, sustained physical injury, pain, suffering, humiliation, loss of income, monetary loss, reputational loss, and destruction of opportunities for advancement in the nursing profession." (*Id*. at ¶¶ 67, 75, 83, 95, 107, 116, 128, 143, 154, 164.)

On April 3, 2018, Plaintiff disclosed Steven R. Farmilant, Psy. D, as her expert witness. (Dkt. 80-1.) According to Dr. Farmilant, he was asked to assess whether the perceived unfair treatment against Plaintiff "would reasonably be expected to impair one's work performance, and to assess Ms. Marcial to determine if she meets the diagnostic criteria for any stress disorder

---

[2] The counts are mislabeled in Plaintiff's First Amended Complaint; there are two claims listed as Count VIII.

that might have resulted from this treatment." (Dkt. 80-1.) As required by the Federal Rules of Civil Procedure, Dr. Farmilant disclosed the documents he had reviewed to reach the conclusions in his expert report. *See* Fed. R. Civ. P. 26(a)(2)(B).

Due to the nature of Dr. Farmilant's report, many of these documents included therapy records for Plaintiff and other sensitive materials. As such, Plaintiff filed the instant motion for leave to file those documents under seal; Defendants challenged that motion. (Dkt. 93.) In her memorandum in support of her motion, Plaintiff indicated that there was "no action needed" on several documents, which the Court reads to mean that Plaintiff is no longer seeking to seal those documents. (Dkt. 97, Ex. A.) For other documents, Plaintiff adjusted her request to seal to a requested to file redacted versions of those documents. (*Id.*) Defendants did not oppose such redactions, provided they were to protect non-party personnel or contact information, or required by the Family Educational Rights and Privacy Act ("FERPA"). (Dkt. 98 at 4.) As such, there remains only a narrow universe of documents or redactions over which the parties continue to argue. From the Court's review, it includes the following documents: 1) redaction of "confidential medical information not at issue and information protected by the psychotherapist-patient privilege" in Plaintiff's Response and Objections to Defendants' First Set of Interrogatories (Ex. A1 to Dr. Farmilant's Report); 2) student evaluations for another potentially similarly situated CRNA student ("K.K.") (Ex. A10 Dr. Farmilant's Report); 3) the deposition of Dr. Karen Kreiner, a psychiatrist who treated Plaintiff (Ex. A17 Dr. Farmilant's Report); 4) documents subpoenaed from Dr. Kreiner (Ex. A18 Dr. Farmilant's Report); 5) documents subpoenaed from Dr. Hilarie Terrebessy, a staff psychologist at Rush who treated Plaintiff (Ex. A19 Dr. Farmilant's Report); 6) the deposition of Dr. Thomas Holmes, Plaintiff's primary care physician (Ex. A20 Dr. Farmilant's Report); and 7) documents subpoenaed from Dr. Holmes

(Ex. A21 Dr. Farmilant's Report). Plaintiff's motion has been fully briefed and is ripe for disposition.

## DISCUSSION

### I. LEGAL STANDARD

In this district, the sealing of documents is governed by Local Rule 26.2(b), which states that the Court "may for good cause shown enter an order directing that one or more documents be filed under seal." However, the Seventh Circuit has generally taken a dim view of sealing documents, and has articulated a somewhat rigorous standard for demonstrating good cause to seal documents. While "[s]ecrecy is fine at the discovery stage, before the materials enter the judicial record," "those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l., Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002). "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). When litigants "call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials." *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). "'It is desirable that the trial of causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.'" *Goesel v. Boley Int'l Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (quoting *Cowley v.*

4

*Pulsifer*, 137 Mass. 392, 394 (1884) (Holmes, J.)). "Judges deliberate in private but issue public decisions after public arguments based on public records," and "[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." *Union Oil*, 220 F.3d at 568.

## II. DOCUMENTS PLAINTIFF SEEKS TO SEAL

### A. PLAINTIFF'S RESPONSES TO DEFENDANTS' INTERROGATORIES

Plaintiff must file a version of her responses to Defendants' First Set of Interrogatories that only contains redactions for non-party contact information or personnel information; Plaintiff may not redact that document for any other reason (*i.e.*, Plaintiff cannot redact the documents due to confidential medical information). The Court has reviewed the responses that Plaintiff seeks to redact, and they concern the conditions that Plaintiff claims led to her leaves of absence from the Rush CRNA program, and a description of her treatment for those conditions. Dr. Farmilant reviewed this document and this information in reaching the conclusions put forth in his expert report. There is currently pending before the Court a motion to exclude Dr. Farmilant's testimony. (Dkt. 78.) This will necessarily require the Court to consider whether Dr. Farmilant's opinion is based on sufficient facts or data, and is the product of reliable principles and methods. *See* Fed. R. Evid. 702. In other words, this document is very clearly part of the subset of documents in discovery "that [will] influence or underpin the judicial decision" on the motion to exclude Dr. Farmilant's testimony. *See Baxter*, 297 F.3d at 545. As such, Seventh Circuit case law requires that the documents be open to public inspection, "unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d at 701.

Plaintiff presents two arguments to justify confidentiality: 1) the psychotherapist-patient privilege; and 2) the likelihood of embarrassment to the Plaintiff if these records are made

5

public. (Dkt. 97 at 7.) As to the former, a plaintiff who places his or her mental health at issue by seeking emotional distress damages waives the psychotherapist-patient privilege. *See Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp. 2d 983, 989 (N.D. Ill. 2010). This is especially true where, as here, the Plaintiff has not only alleged emotional distress damages, but has actively engaged an expert witness to "assess Ms. Marcial to determine if she meets the diagnostic criteria for any stress disorder that might have resulted from" the treatment she was subjected to by the Defendants. The Plaintiff has made affirmative choices to make her mental health a central part of her claims for damages. She did not need to do so. She could have pursued a claim solely for damages relating to her alleged economic and career damage that was the result of Defendants' alleged discrimination. However, by placing the issue of her mental health squarely into middle of this dispute, she has waived her right to claim a psychotherapist-patient privilege over these documents, and the Court will not seal this document on that basis.

As for the embarrassment argument, Federal Rule of Civil Procedure 26(c)(1) states that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). From the plain language of the rule, it is not sufficient that the Plaintiff claim that the materials would simply embarrass her; she must show that there is "good cause" to protect her from embarrassment. This same good cause standard is echoed by Local Rule 26.2 pertaining to the sealing of otherwise publicly filed materials. "To satisfy the good cause requirement in Rule 26(c), the party seeking the entry of the order must provide 'specific examples of articulated reasoning', rather than 'stereotyped and conclusory statements' to support its assertion of good cause." *Alexander Housing LLC v. Int'l Broth. of Elec. Workers*, 2004 WL 1718654, at *3 (N.D. Ill. July 29, 2004) (citing *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 340 (N.D. Ill. 1998)).

The entirety of Plaintiff's argument in her brief is as follows: "[n]ot sealing this information could cause Plaintiff embarrassment, an interest that the courts and Federal Rules of Civil Procedure seek to protect." (Dkt. 97 at 7.) This is a conclusory statement that does not constitute "good cause" under the Federal Rules of Civil Procedure or the Local Rules. As the party seeking confidentiality, the Plaintiff has the burden to show good cause, and must do more than making a vague appeal to the embarrassment these records would cause, particularly when Plaintiff chose to file this suit, claim emotional distress damages, and retain an expert to prove that Defendants' treatment of Plaintiff caused her to meet the diagnostic criteria of a stress disorder. *See Heraues Kulzer, GMBH v. Biomet, Inc.*, 881 F.3d 550, 556 (7th Cir. 2018).

### B. RECORDS FROM DRS. KREINER AND TERREBESSY

Plaintiff must also publicly file the deposition transcript of Dr. Kreiner, the documents produced by Dr. Kreiner pursuant to subpoena, and the documents produced by Dr. Terrebessy pursuant to subpoena. Regarding these document, Plaintiff makes the same arguments as above – namely, that the documents are protected by the psychotherapist-patient privilege and would cause Plaintiff embarrassment. Her arguments regarding embarrassment are almost identical to the passage quoted by the Court in the previous section, and the Court rejects those arguments for the same reasons discussed in the previous portion of this opinion; Plaintiff has waived the privilege and has not provided specific demonstrations of fact necessary to support a finding of "good cause" for confidentiality. Moreover, these documents are plainly crucial to the decision this Court will have to make regarding the foundation for Dr. Farmilant's opinion. These are contemporaneous therapy records during the time Plaintiff was in the midst of her tribulations in the CRNA program at Rush, and are the most valuable documents in determining whether Defendants' treatment of Plaintiff caused her to suffer from a stress disorder. It would be

difficult to imagine documents that would be relied on more heavily in forming Dr. Farmilant's opinion, and thereby more likely to underpin this Court's forthcoming decision on the reliability of that opinion. As such, these are precisely the type of documents that should be open to public inspection.

### C. RECORDS FROM DR. HOLMES

The Court believes that certain portions of Dr. Holmes's deposition and treatment notes should be redacted to protect Plaintiff from undue embarrassment. However, Plaintiff has sought to file these documents under seal in their entirety. As such, the Court orders the parties to meet and confer to agree to redactions that comport with this opinion, and file a redacted version of the aforementioned documents within seven days of this opinion.

In the portion of her brief pertaining to Dr. Holmes's records, Plaintiff noted that public disclosure of these documents could harm her potential for future employment as a registered nurse. Although it is a close call, the Court believes that this is sufficiently specific to meet the good cause standard. Having shown good cause, "a court then must balance the public's interest in access to the record against the interest of the party seeking confidentiality determine whether to seal the record." *In re Bank One Securities Litig.*, 222 F.R.D. 582, 586 (N.D. Ill. 2004) (citing *In re Matter of Cont'l Securities Litig.*, 723 F.2d 1302, 1313 (7th Cir. 1984)). The Court notes that these documents – coming from Plaintiff's primary care physician, as opposed to a mental health professional – have less relevance to Dr. Farmilant's opinion on Plaintiff's possible stress disorders. To the extent that any of the information contained in these documents is not relevant to Dr. Farmilant's opinion, Plaintiff's interest in maintaining confidentiality outweighs the public's right to inspect documents that are essential to the Court's decision on Defendant's motion to exclude Dr. Farmilant's report and testimony. Any such irrelevant information may be

redacted. However, any information that is relevant to Dr. Farmilant's opinion should remain public.³ As noted many times in this opinion, the public is presumed to have a right to this information. Having reviewed the documents, the Court finds that the Plaintiff's concern regarding embarrassment has relatively little weight, particularly since most of the potentially embarrassing relevant subject matter is already going to be publicly available through the records from Drs. Kreiner and Terrebessy.⁴ Therefore, the Court orders the parties to meet and confer regarding the portions of Dr. Holmes's records that may be redacted, and to file a version of those documents with the agreed redactions within seven days of this opinion.

D.     **K.K.'s EVALUATIONS**

Plaintiff must file a redacted version of K.K.'s evaluations that comport with FERPA. FERPA prohibits educational institutions from releasing identification information in a student's record without their written consent. 34 C.F.R. § 99.30. Although K.K. has consented to the production of her documents in this case, it is unclear to the Court whether that consent was limited to production under the Confidentiality Order in this case or included consent to have her evaluations filed on a public docket.⁵ Either way, the Defendants have agreed to redact the evaluations in a way that satisfies FERPA's requirements, which the Court believes is a sensible solution. Additionally, Plaintiff has not explained why FERPA requires that K.K.'s evaluations must be sealed in their entirety. when redactions could sufficiently protect her interests.

---

³ This includes the documentation of palpitations that forms a large portion of the deposition of Dr. Holmes.

⁴ To be clear, the Court is not suggesting that the public interest outweighs Plaintiff's privacy concerns *only* because of the other information that the Court is ordering Plaintiff to publicly file, or that Plaintiff's privacy interest in sealing the documents from Drs. Kreiner and Terrebessy would outweigh the public interest if Plaintiff had she been able to adequately demonstrate good cause. However, the fact of that matter is that Plaintiff has failed to show good cause to file those documents under seal, so they will be public, and that fact necessarily weighs into the Court's calculation.

⁵ The Confidentiality Order limits the dissemination of confidential discovery materials to counsel, the parties, and a small universe of third parties, such as court reporters, witnesses, and expert witnesses. (Dkt. 72 at 3-4.) However, the Confidentiality Order also provides that any party wishing to file a document under seal must comply with Local Rule 26.2. It is possible that K.K. consented to the release of her documents in discovery to be shared with the limited group of people described above without intending or understanding that those documents could be filed on a publicly accessible court docket.

Therefore, the Court orders that a redacted version of K.K.'s evaluations that meets the requirements of FERPA be filed publicly.

## **CONCLUSION**

For the reasons discussed herein, Plaintiff's Motion for Leave to File Documents Under Seal [93] is granted in part and denied in part.

**ENTERED:**

Date: August 30, 2018

_____
U.S. Magistrate Judge, Susan E. Cox